IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEDRICK PETERSON, #148313, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05-CV-156-MEF |
| | ) | [WO] |
| | ) | |
| WILLIAM SEGREST, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Dedrick Peterson ["Peterson"], a former state inmate, complains that the defendants violated his constitutional rights when they failed to properly consider him for parole and denied him the opportunity for release on parole.[1] Peterson names William Segrest, executive director of the Alabama Board of Pardons and Paroles, Cynthia Dillard, assistant executive director of the Alabama Board of Pardons and Paroles, Nancy McCreary, Sidney Williams and Velinda Weatherly, former or current members of the Alabama Board of Pardons and Paroles, Carolyn Flack, operations director

---

[1] The Clerk of this court stamped the original complaint "filed" on February 18, 2005, it is clear, however, that Peterson presented the complaint to prison officials for mailing prior to this date. A review of the pleadings indicates that Peterson executed the initial complaint on February 17, 2005. *Plaintiff's Initial Complaint - Court Doc. No. 1* at 13. The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Peterson] signed it ...." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Although Peterson subsequently filed a second amended and substituted complaint on which this case proceeds, *Court Doc. No. 10*, the court considers February 17, 2005 as the date of filing for this cause of action.

of the Alabama Board of Pardons and Paroles, and the Alabama Board of Pardons and Paroles as defendants in this cause of action.  Peterson seeks declaratory judgment, injunctive relief and monetary damages.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Peterson's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  *Order of June 27, 2005 - Court Doc. No. 19*; *Order of September 22, 2005 - Court Doc. No. 34*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Peterson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Anderson v. Liberty Lobby*, 477 U.S. at

2

249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations of a constitutional violation similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the

evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Peterson has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  DISCUSSION

Peterson asserts that the defendants violated his constitutional rights in the parole consideration process and resulting denials of parole.  Specifically, Peterson complains that the defendants (i) denied him due process, (ii) acted in violation of the Ex Post Facto Clause, (iii) engaged in a conspiracy against him, (iv) violated his civil rights under 42

U.S.C. § 1997, (v) deprived him of equal protection due to his race, (vi) retaliated against him for filing this lawsuit, and (vii) subjected him to cruel and unusual punishment. Under applicable federal law, these claims entitle Peterson to no relief from this court. Summary judgment is therefore due to be granted in favor of the defendants.

### A.  The Alabama Board of Pardons and Paroles

In the body of his complaint, Peterson lists the Alabama Board of Pardons and Paroles as a defendant. The law is well-settled that a state agency is absolutely immune from suit. *Papasan v. Allain*, 478 U.S. 265 (1986). Moreover, a state agency is merely an extension of the State and is therefore "not a 'person' within the meaning of § 1983...." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2309 (1989). Thus, the plaintiff's claims against the Alabama Board of Pardons and Paroles are frivolous as they are "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

### B.  Claims Barred by the Statute of Limitations

Peterson asserts that the parole consideration process and resulting denials of parole occurring in 1993, 1995, 1996, 1998, 1999 and 2001 violated his constitutional rights. In support of this assertion, Peterson contends that "[i]nstead of holding a parole consideration hearing that was statutory enacted at the time of Plaintiff's sentencing, [parole officials] held ... 'illegal Screening Hearing[s]' in Plaintiff's case, starting from July 19, 1993 through July 10, 1995; June 17, 1996; June 15, 1998; October 4, 1999, and January 29, 2001, as a

pretext for the Board's mandatory statutory duties" with respect to providing notice to his victims. *Plaintiff's Second Amended Complaint – Court Doc. No. 10* at 7. He further contends that the defendants "refused and failed to notify Plaintiff's victims" during the afore referenced parole consideration proceedings as required by § 15-22-36(e)(1), *Ala. Code* (1975, as amended), thereby denying him a protected liberty interest in such notices and prejudicing his opportunity for release on parole. *Id.* at 8. Peterson further argues that the defendants denied him "the same essential element for parole eligibility as they have similarly situated white prisoners [as these prisoners] ... had benefit of Defendants locating and providing written notices to their victims [affording the referenced white inmates] ... a statutory required parole consideration hearing ... [whereas] the Plaintiff on [these] six (6) prior occasions [of parole consideration was] ... arbitrarily and capriciously denied ... proper parole consideration with benefit of notice to victims Plaintiff is convicted of perpetrating crimes against...." *Id.* at 7-8.

The claims presented by Peterson arising from adverse parole actions or decisions which occurred prior to February 16, 2003 are barred by the statute of limitations.

> Federal courts must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled. *Whitson v. Baker*, 755 F.2d 1406, 1409 (11th Cir. 1985). Selection of a limitations period for § 1983 actions changed several times [between 1985 and 1989]. Alabama law, however, provides that the applicable limitations period is the one in effect when the claim is filed, not when the cause of action arose. *Tyson v. Johns Manville Sales Corp.*, 399 So.2d 263, 269-70 (Ala. 1981). It is undisputed that § 1983 claims were subject to a two year limitations period at that time. *See Jones v. Preuit & Mauldin*, 876 F.2d

1480, 1483-84 (11th Cir. 1989) (*Jones II*).

*Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994).  In Alabama, the general statute of limitations for personal injury actions is two years.  *Ala. Code* § 6-2-38(l).  Thus, at the time Peterson filed the instant complaint, the applicable statute of limitations for actions brought under 42 U.S.C. § 1983 was two years.  *Owens v. Okure*, 488 U.S. 235, 249-250 (1989)(the proper statute of limitations for § 1983 actions is the forum state's general or residual statute of limitations for personal injury actions); *see also Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992)

Peterson challenges actions related to the parole consideration process and parole decisions which occurred in 1993, 1995, 1996, 1998, 1999 and 2001.  On May 17, 1996, the Alabama legislature rescinded that portion of the tolling provision which previously applied to convicted prisoners.  *Ala. Code* § 6-2-8(a) (1975, as amended).  The tolling provision of *Ala. Code* § 6-2-8(a) is therefore unavailing.  As previously noted, Peterson filed the instant complaint on February 17, 2005.  This filing occurred ***after*** the applicable period of limitation had lapsed on the aforementioned claims.

Based on the uncontroverted facts of this case, Peterson has no legal basis on which to proceed with respect to any claims that arose before February 16, 2003 as he filed this cause of action more than two (2) years after these alleged violations accrued.  As previously determined, the statutory tolling provision provides no basis for relief.  In light of the foregoing, the court concludes that Peterson's challenges to adverse actions taken

against him prior to February 16, 2003 are barred by the applicable statute of limitations and the defendants are therefore entitled to summary judgment on these claims.

## C. Claims Related to the Scheduled 2004 Parole Consideration Hearing

### 1. Due Process

Peterson maintains that the defendants deprived him of due process with respect to the parole consideration hearing scheduled for January of 2004. Specifically, he complains that the defendants acted in violation of his due process rights when they (i) failed to provide him a parole consideration hearing on his scheduled date and delayed such hearing without justifiable reason, (ii) failed to act in accordance with laws and regulations applicable to the determination of parole consideration dates and scheduling of parole hearings, (iii) utilized statutes and regulations enacted after his date of conviction in the parole consideration process, and (iv) failed to properly interview him prior to his parole hearing. Peterson's claims arising from an alleged lack of due process in the parole consideration process entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole.... When the statute is framed in discretionary terms there is not a liberty interest created." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). This court's exhaustive review of the history of the Alabama parole

8

statute establishes that from its inception the statute has been framed in discretionary terms. The law is well settled that "[t]he mere possibility of parole provides simply 'a hope that is not protected by due process….' *Greenholtz,* 442 U.S. at 11, 12, 96 S.Ct. at 2105, 2106 (1979)…. [Moreover], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

> Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."

*Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir. 1982). Peterson does not possess a liberty interest in being granted parole that is protected by the Due Process Clause. *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489. Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision

making process, *Thomas*, *supra*, or the determination of parole consideration dates. *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole laws or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Moreover, a delay in holding a parole consideration hearing past the originally scheduled hearing date in violation of the governing administrative regulations likewise does not run afoul of the Constitution. Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] ... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to

the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. The defendants maintain any delay in the parole consideration process occurred due to their efforts to notify Peterson's victims of his pending parole consideration as required by state law. These efforts demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Peterson has therefore failed to present any evidence indicating arbitrary or capricious action on the part of the defendants. Consequently, the motion for summary judgment with respect to each of Peterson's due process claims should be granted in favor the defendants.

## 2. Ex Post Facto

Peterson asserts that the defendants violated the Ex Post Facto Clause when they utilized the 1996 Crime Victims' Rights Act, *Ala. Code* § 15-23-60 et seq., and the 2004 amendment to *Ala. Code* § 15-22-36(e)(1), statutes adopted after his conviction by the Circuit Court of Jefferson County, Alabama on September 30, 1986, during the parole consideration process. Peterson argues that such reliance resulted in the denial of parole and

11

increased punishment.

The Ex Post Facto Clause directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).  Imposition of punishment upon Peterson under the Act is an essential element of his ex post facto claim. Upon review of the Crime Victims' Rights Act and the challenged amendment to § 15-22-36(e)(1) , the court concludes that Peterson's claim is without merit.

The relevant provision of the Crime Victims' Rights Act provides that "[t]he victim ... may submit a written statement, or recorded oral transcription, which shall be entered into the prisoner's [correctional] records.  The statement shall be considered during any [classification] review for community status of the prisoner or prior to release of the prisoner....  The victim shall have the right to be notified by the Board of Pardons and Paroles and allowed to be present and heard at a hearing when parole or pardon is considered ...." *Ala. Code* § 15-23-79(a)-(b).  Since initial enactment of the Alabama Code in 1940, the Alabama Board of Pardons and Paroles has been required to notify crime victims and, subsequently, either the victims or their immediate families of any action to be undertaken by the board.  *Ala. Code* § 15-22-36(e)(1) (1975, as amended), formerly codified at *Ala. Code* § 15-22-36(e)(1)(i) (1940).  Additionally, a victim or someone on their behalf has always been afforded the right, "at their option, to either appear before the board or give their views in writing." *Ala. Code* § 15-22-36(e)(2)i. (1975, as amended),

formerly codified at *Ala. Code* § 15-22-36(e)(2)i. (1940).

Neither the terms of the Crime Victims' Rights Act nor the victim notification provision of § 15-22-36(e)(1) inflicts greater punishment on Peterson.  These statutes likewise did not create any risk of increased punishment to Peterson.  Moreover, the directives of the Crime Victims' Rights Act relative to parole merely address rights of victims previously and continuously provided under the provisions of *Ala. Code* § 15-22-36(e)(1).  In light of the foregoing, the court concludes that Peterson has failed to establish a violation of his constitutional rights with respect to application of either the Crime Victims' Rights Act or the notification provision of § 15-22-36(e)(1) and summary judgment is due to be granted in favor of the defendants on this claim.

### 3.  The Conspiracy Claims

Peterson alleges that the defendants committed a violation of 42 U.S.C. § 1985 when they engaged in a conspiracy to subject him to a parole consideration process different from that provided other inmates.  *Plaintiff's Second Amended Complaint – Court Doc. No. 10* at 13.  He further argues that the defendants "having knowledge of the wrongs conspired to be done and about to be committed" failed to prevent the "violation of 42 U.S.C. § 1985" as required by the provisions of 42 U.S.C. § 1986.  *Id*. at 15.  To establish a conspiracy, a plaintiff "'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053,

114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-1284 (11th 2002).  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The defendants deny that they conspired to violate Peterson's constitutional rights and argue that they undertook the actions about which Peterson complains in an attempt to comply with state law. The court has carefully reviewed the pleadings filed by Peterson. There is a total lack of evidence to support his theory that the defendants conspired to deprive him of his constitutional rights and/or failed to undertake actions to prevent a conspiracy.   Specifically, Peterson fails to present any probative evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy."  *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Peterson's assertions are self serving, purely

conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between the defendants. *See Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, Peterson has failed to produce requisite evidence of a conspiracy and summary judgment is due to be granted in favor of the defendants as to the claims related to a purported conspiracy. *Bailey*, 956 F.2d at 1122.

### 4.  42 U.S.C. § 1997

Peterson seeks to bring this *pro se* civil action against the defendants under 42 U.S.C. § 1997 for the alleged violations of his constitutional rights. *Plaintiff's Second Amended Complaint – Court Doc. No. 10* at 16. However, Peterson is precluded from asserting claims pursuant to 42 U.S.C. § 1997 because there is no private right of action under this statute. Specifically, 42 U.S.C. § 1997a(a) directs that only the Attorney General for the United States "may institute a civil action" under such statute. An additional condition of a 42 U.S.C. § 1997 action is that the "Attorney General shall personally sign any complaint filed pursuant to this section." 42 U.S.C. § 1997a(c). Consequently, Peterson may not seek relief pursuant to 42 U.S.C. § 1997 and his claims under this section are subject to dismissal.

### 5.  Equal Protection

Peterson asserts that the defendants failed to provide him the same protections afforded to "similarly situated white prisoners" such that he "has been arbitrarily barred from Parole Consideration." *Plaintiff's Second Amended Complaint - Court Doc. No. 10* at 17. The defendants adamantly deny that they acted in violation of the plaintiff's equal protection rights; instead, the defendants maintain that every action undertaken in the parole consideration process occurred due to their efforts to comply with state law and that Peterson's race did not impact any decision or action.

In order to present a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination. *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 265-266 (1977). "Mere error or mistake in judgment ... does not violate the equal protection clause. There must be intentional

16

discrimination [by the defendants].... Even arbitrary administration of [parole regulations],
without purposeful discrimination, does not violate the equal protection clause." *E & T
Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293
(1987) (simple disparity of treatment between individuals of different races is insufficient
to establish discrimination).   "The requirement of intentional discrimination prevents
plaintiffs from bootstrapping all misapplications of state [rule and regulations] into equal
protection claims. 'Probably no law contrived by man for his own governance ever has had
or will be enforced uniformly and without exception. But the Constitution does not demand
perfection.'" *E & T Realty*, 830 F.2d at 1114 (citations omitted).   Consequently,

> "[p]roof of racially discriminatory intent or purpose is required to show a
> violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at
> 265, 97 S.Ct. 555.   Indeed, it is well established that proving intent to
> discriminate is the essential element of an equal protection claim. *See, e.g.*,;
> *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d
> 395 (1991) ("A court addressing [an equal protection claim] must keep in
> mind the fundamental principle that 'official action will not be held
> unconstitutional solely because it results in a racially disproportionate
> impact....   Proof of racially discriminatory intent or purpose is required to
> show a violation of the Equal Protection Clause.'" (omission in original)
> (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington
> v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson
> v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our
> Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v.
> Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993);
> *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City
> of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-1349 (11th Cir. 2005).

17

"'Discriminatory purpose[]' ... implies more than intent as volition or intent as awareness of consequences....  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).   In a case such as this one, where the plaintiff challenges actions of state parole officials, exceptionally clear proof of discriminatory intent is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendants. *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Peterson bears the burden of producing specific, substantial evidence that the defendants intentionally discriminated against him due to his race. *Arlington Heights*,  429 U.S. at 265; *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  Purposeful discrimination can be shown either by direct evidence, i.e., admissions of the defendant, or indirectly by way of substantially probative circumstantial evidence. *Arlington Heights*, 429 U.S. at 265-266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary

18

judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants. *Id*. at 249.

Peterson alleges that the defendants denied him fair parole consideration due to his race. The defendants deny that the actions undertaken with respect to Peterson occurred due to Peterson's race and maintain that these actions transpired in their efforts to comply with state law. Assuming, without deciding, that Peterson and the white inmates he alleges received more favorable treatment were similarly situated, Peterson has utterly and completely failed to present any evidence, significantly probative or otherwise, that racial discrimination or purpose constituted a motivating factor in the actions of the defendants about which he complains. The circumstantial evidence presented by Peterson does not warrant an inference of discriminatory intent as the showing of a disparate impact upon racially diverse inmates is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Additionally, the arbitrary application of administrative rules does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114. Peterson simply makes the conclusory legal assertion that the actions undertaken by the defendants in his parole consideration process resulted from racial discrimination because some white inmates allegedly received more favorable treatment. Beyond this self-serving and conclusory

19

allegation, Peterson produces nothing which suggests that racial animus motivated the defendants' actions.  Summary judgment is therefore due to be granted in favor of the defendants on Peterson's equal protection claim.

### 6.  Retaliation

Peterson asserts that the defendants retaliated against him for filing this lawsuit because such resulted in a further delay of his parole consideration hearing.  The defendants deny that they acted in retaliation for plaintiff filing this case of action; rather, the defendants maintain that retrieval of Peterson's parole file from officials "in the process of preparing the file for a hearing" was necessary for preparation of a response to the complaint and "[a]s soon as the Special Report was prepared, the file was returned to be processed for hearing."  *Defendants' Supplemental Special Report – Court Doc. No 33* at 2.  The defendants therefore argue that the filing of this case necessitated a review of Peterson's parole file and such review occurred in response to the orders of this court that they file a special report addressing the claims presented in the complaint, ***not*** in retaliation for Peterson filing the lawsuit.

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*,

794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner demonstrate correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a state official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

21

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that parole officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to parole officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the parole official retaliated against the inmate. This may be done by the parole official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The parole official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the parole official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Peterson asserts that the defendants delayed his parole consideration hearing in retaliation for his filing this lawsuit.  The defendants, however, have demonstrated through relevant admissible evidence that the adverse action about which Peterson complains resulted solely from their effort to prepare a response in this case.  Peterson offers only his conclusory allegation that the defendants  acted in an unconstitutional retaliatory manner. As this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Peterson's conclusory allegation of retaliation is insufficient to show that the reason proffered by the defendants for review of Peterson's parole file, a reason substantiated by the evidentiary materials and orders issued by this court, is pretextual.  The defendants are therefore entitled to summary judgment on the retaliation claim as Peterson has failed to establish a causal relationship between his protected activity and the challenged adverse action.  *Farrow*, 320 F.3d at 1249.

### 7.  Cruel and Unusual Punishment

To the extent Peterson alleges the defendants subjected him to cruel and unusual punishment, he is likewise entitled to no relief.  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny an inmate "the

minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). Neither a delay in parole consideration nor the denial of parole rises to the level of an Eighth Amendment violation. Consequently, the defendants are entitled to summary judgment on this claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by the defendants be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 2, 2007 the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 20th day of July, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE